# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BUTTERS LIVING TRUST, | : | CIVIL NO. 4:12-CV-2010 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SWEPI, INC., | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**I.     Introduction, Procedural History and Statement of Facts**

This case, which comes before us on a motion to dismiss, presents a cautionary tale regarding the importance of clarity in contract negotiations.

On August 23, 2012, the plaintiff, Butters Living Trust, filed this action in the Court of Common Pleas of Tioga County, seeking declaratory relief regarding the interpretation of a hydro-carbon lease agreement between Butters and SWEPI, Inc., or, in the alternative, relief in the nature of either a quiet title action or an action for ejectment. (Doc. 2.) On October 5, 2012, SWEPI removed this state court action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1.) SWEPI then moved to dismiss the complaint, (Doc. 4.), a motion which has been fully briefed, (Docs. 6, 9, 14, 17.), and argued, (Docs. 20-21.), by the parties. Therefore, this matter is now ripe for resolution.

With respect to this particular hydro-carbon lease interpretation dispute, the well-pleaded facts, and undisputedly authentic documents, reveal the following:

On February 16, 2007, the parties entered into a written oil and gas lease agreement. Paragraph 3 of this agreement provided that, with respect to pooled[1] lands

---

[1]"Pooling" or "unitizing" is a term of art in the field of hydro-carbon leasing and is described in the following terms:

> Because there may be a pool of oil under several tracts of land with each tract having a different ownership, yet all of the oil might be removed by a single well on one of the tracts as a result of its fluidity to the detriment of the owners of the other tracts, a need has arisen for laws providing for the pooling of diverse interests into one or more drilling units for the production of oil. A "pool," for purposes of a unitization act, has been deemed to include commingled oil and gas well formations constituting a single and separate natural reservoir characterized by a single pressure system, so that the production of petroleum from one part of the pool affects the reservoir pressure throughout its extent. "Pooling" refers to the bringing together of two or more small or irregularly shaped tracts of land to form a drill site in connection with a program of uniform well spacing with the arrangement being essentially a species of joint venture whereby the various owners of the tracts pooled join to drill a well and to share in the benefits to be expected. The primary legal consequence of pooling oil and gas leases is that production and operations anywhere on the pooled unit are treated as if they have taken place on each tract within the unit. An oil and gas lessee's pooling decision will be upheld unless the lessee pools in bad faith. Where a lessee pools oil and gas leases in good faith, the lessee is relieved of the obligation to reasonably develop each tract separately, or to drill off-set wells on other tracts included in the unit to prevent drainage by a well on one or more of such tracts. If oil and gas leases are not pooled in good faith, production will be considered to take place only on the actual tract upon which it occurs, and production from a unit well will not

2

that were producing hydro-carbons, the primary term of the agreement was for five years from February 16, 2007, (Doc. 2, Exs.), or for "so long thereafter as oil, gas, and other substances . . . , are produced in paying quantities from the leased premises." (Id.) Paragraph 3 of the lease further provided that "so long as the lease is extended beyond the primary term by any provision of this lease, Lessee may commence, resume or continue to" exercise rights under the lease. (Id.) This prefatory language in the lease which could be construed as contemplating some lease extension, was then enigmatically contradicted by the parties, who expressly deleted from Paragraph 3 of the lease those provisions of the lease which would have authorized extension of the lease term. (Id.) Thus, this paragraph of the lease, read in isolation, seemed to simultaneously both contemplate, and refuse to countenance, extensions of the lease term.

---

> maintain off-site leases. "Unitization" or "unit operation" represents the development and operation of an oil pool as a unit, and involves the consolidation or merger of all of the interests in the pool and the designation of one or more of the parties as operator. The unitization of oil and gas production permits the entire field or a substantial part of it to be operated as a single entity without regard to surface boundary issues. Unitization effects a merging of all the involved gas and oil leases into one contract and a vesting in all the lessors of a right to participate in any royalty produced on any tract.

38 Am. Jur. 2d. § 172(2012). In this case the parties' dispute appears to relate exclusively to the interpretation of the lease with respect to non-pooled property.

The enigmatic quality of this lease was further heightened by a lease addendum executed by the parties on February 16, 2007. (Id.) That addendum presumably was designed to add clarity to the agreement, but now compounds confusion regarding the meaning of this document, since the lease addendum provided that with respect to non-pooled acreage the "Lessee shall have the option to extend any and all non-pooled acres for a period of five additional years *under the same terms of this lease*." (Id., addendum ¶9.)(emphasis added). Thus, while Paragraph 9 of the lease addendum seemed on one hand to provide the lessee with a right to extend the term of the lease for non-pooled acreage, this paragraph also expressly tied that lease extension right to the terms of the original lease agreement, an agreement in which the lease extension provisions had been stricken entirely by the parties.

According to Butters' complaint, on January 11, 2012, SWEPI improperly attempted to extend the primary term of some 726.95 acres of non-pooled property encompassed by the original lease by tendering a check in the amount of $72,303 to Butters.[2] The complaint then alleges that, because the Butters construed the oil and

---

[2] At oral argument on this motion to dismiss, it was revealed that this tendered payment had an additional, mysterious quality to it, one which further compounded the confusion regarding the meaning of this agreement. While the lease agreement has several provisions describing how lease payments should be calculated, (Doc. 2, lease ¶6.), none of these provisions would arithmetically result in a $72,303 lease extension payment to Butters by SWEPI, a fact conceded by

4

gas lease as having no extension terms for non-pooled acreage, the plaintiff rejected this tendered payment. (Doc. 2.) Butters then demanded that SWEPI surrender its leasehold interest on this property. (Id.) When SWEPI refused, this lawsuit ensued. (Id.)

It is against the background of these well-pleaded facts that we are called upon to assess the defendant's motion to dismiss. With our review cabined by these well-pleaded facts, and the undisputed authentic documents, we find that material issues of fact exist in this case, which makes dismissal of this action on the pleadings inappropriate. Accordingly, for the reasons set forth below, it is recommended that the motion to dismiss be denied.

## II. Discussion

### A. Motion to Dismiss–Standard of Review

Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and

---

defendant's counsel. Thus, the amount of this tendered payment by SWEPI bears no comprehensible relationship to the terms of the lease, a lease that SWEPI argues has a clarity that justifies a judgment in its favor as a matter of law.

dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose

contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. Legal Standards Governing Hydro-Carbon Lease Interpretation

"Under Pennsylvania law, 'a lease is in the nature of a contract and is controlled by principles of contract law.' T.W. Phillips Gas and Oil Co. v. Jedlicka, ⎯⎯ Pa. ⎯⎯, 42 A.3d 261, 267 (Pa.2012). The lease 'is to be construed in accordance with the terms of the agreement as manifestly expressed,' J.K. Willison v. Consolidation Coal Company, 536 Pa. 49, 637 A.2d 979, 982 (1994), and the language of the lease should be given its 'accepted and plain meaning, rather than the silent intentions of the contracting parties.' T.W. Phillips, 42 A.3d at 261. The burden of proof is borne by the party seeking to terminate the lease. Id. (citing

Jefferson County Gas Co. v. United Natural Gas Co., 247 Pa. 283, 286, 93 A. 340, 341 (1915))." Stewart v. SWEPI, LP, 4:11-CV-2241, 2013 WL 170181 (M.D. Pa. Jan. 16, 2013).

The law governing the interpretation of contracts under Pennsylvania law is familiar and well-settled. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). Further, when construing a written contract which has both printed, and hand-written terms, additional rules of construction apply: "When a contract contains either hand or typewritten terms which are in conflict with the preprinted terms, the pre-printed terms must always yield to the other terms because the hand or typewritten term presumably evidences the deliberate expression of the parties' true intent." Flatley by Flatley v. Penman, 632 A.2d 1342, 1345 (Pa.Super. 1993).

A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

8

As the United States Court of Appeals for the Third Circuit has observed several basic legal tenets govern Pennsylvania law regarding the interpretation of contractual language and terms:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. *Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties.* A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (Pa. 2001)) (emphasis added). Furthermore, it is hornbook law that courts must, whenever possible, read contract provisions so as to avoid ambiguity. Id. at 247.

Where a contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation as a matter of law, typically on summary judgment. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) ("A court may grant summary judgment on the interpretation of a contract when the contract is susceptible to only one reasonable interpretation . . . When the terms of the contract are unambiguous, the express language of the agreement controls its meaning.").

### C. Factual Disputes Regarding the Interpretation of This Lease Preclude Dismissal of This Complaint At The Outset of This Litigation

In this case, we believe that the enigmatic written lease agreement crafted by the parties presents the paradigm of an ambiguous contract that requires some parol evidence to gain coherence. Under Pennsylvania law, "[t]his question, . . . , is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted). "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." Id.

Here, the parties' written agreement is wholly ambiguous since it is plainly "subject to more than one reasonable interpretation when applied to a particular set

of facts." Id. Paragraph 3 of the lease began by providing that for pooled, producing property the primary term of the agreement was for five years from February 16, 2007, (Doc. 2, Exs.), or "for so long thereafter as oil, gas, and other substances . . . , are produced in paying quantities from the leased premises." (Id.) Paragraph 3 of the lease then provided that "so long as the lease is extended beyond the primary term by any provision of this lease, Lessee may commence, resume or continue to" exercise rights under the lease. (Id.) While this prefatory language in Paragraph 3 may be construed to imply some right to extend the lease on non-pooled acreage, that construction was seemingly disavowed when parties expressly struck the lease extension terms from this paragraph of their written contract, a hand-written change which under Pennsylvania law should be given precedence in construing the written form agreement. Flatley by Flatley v. Penman, 632 A.2d 1342, 1345 (Pa. Super. Ct. 1993).

Further, at the very time that the parties were executing this lease, which is subject to differing interpretations, they executed an addendum to the lease, which also on its face supports at least two different interpretations regarding the intention of the parties. The lease addendum provided, in part, that the "Lessee shall have the option to extend any and all non-pooled acres for a period of five additional years *under the same terms of this lease*." (Doc. 2, addendum ¶9.)(emphasis added). Thus,

11

Paragraph 9 of the lease addendum simultaneously seemed to provide the lessee with a right to extend the term of the lease, while expressly tying that right to the terms of the original lease agreement on non-pooled acreage, an agreement in which the lease extension provisions had been stricken by the parties.

Further, the well-pleaded facts show that, when a lease extension payment was tendered by SWEPI to Butters in January 2012, that payment bore no logical, or mathematical, relationship to any lease payment formula set forth in the written agreement, an odd inconsistency which is unexplained in the pleadings and further illustrates the inherent ambiguity of the contract, since even SWEPI apparently could not calculate what lease payments were due under the agreement to extend the lease terms and duration on non-pooled acreage.

Despite the diligent efforts of defense counsel to try to create some analytical order out of this apparent chaos, viewed in this light the lease and addendum on its face becomes something akin to Winston Churchill's description of Russia: "A riddle, shrouded in mystery, wrapped in an enigma." Therefore, the patent ambiguities in this written contract at a minimum compel resort to parol evidence to provide contractual coherence, making a motion to dismiss on the pleadings inappropriate, and suggesting instead that this dispute may resolved in the first instance only on summary judgment, where the court may consider undisputed

matters outside the pleadings. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) ("A court may grant summary judgment on the interpretation of a contract when the contract is susceptible to only one reasonable interpretation'"). Moreover, if discovery does not add clarity to these contractual terms, then under Pennsylvania law this agreement may well constitute an ambiguous contract which is interpreted by the trier of fact. Mellon Bank, 619 F.2d at 1011 n.10. In either event, dismissal of this contract claim on the pleadings is not warranted and this motion to dismiss should be denied.

In the alternative, the defendant seeks dismissal of Butters' quiet title and ejectment actions, noting that the plaintiff cannot ultimately maintain both a quiet title and an ejectment action in this lawsuit, since these two claims are premised on conflicting factual positions regarding whether the plaintiff actually possesses the property at issue under the lease. Citing the inconsistency between the two claims in terms of this aspect of the ultimate elements of the plaintiff's proof at trial, SWEPI seeks dismissal of these claims.

While this position may have greater force in this case as a matter of proof, at this juncture, where we are simply considering the pleadings, the alleged inconsistency between these two causes of action is not a fatal flaw in this litigation. Instead, it is a practice that is specifically sanctioned by the federal rules, which allow

a party to state separate claims or defenses, regardless of consistency. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); see also Gaines v. Krawczyk, 354 F. Supp. 2d 573, 580 (W.D. Pa. 2004)(under the Federal Rules of Civil Procedure a party may set forth alternative statements of a claim or defense and may state all separate claims and defenses available regardless of consistency); see also Walla v. Sinclair Oil & Gas Co., 17 F.R.D. 506, 507 (D. Neb. 1955)(oil and gas lease litigation, plaintiff permitted under Rule 8 to plead in the alternative claims involving a) the creation of a nuisance, b) negligence, and c) breach of contract the violated engagement being said to arise by implication from the lease). Therefore, this alleged inconsistency in these claims, standing alone, does not provide grounds for dismissal of any claims at the outset of this litigation.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss, (Doc. 4.), be DENIED.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after

being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of June 2013.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge